DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DAVID MARROSO (S.B. #211655)
dmarroso@omm.com
DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
MEGAN KELLER SMITH (S.B. #307381)
megansmith@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for SBE Entertainment Group, LLC,
SBE Hotel Licensing, LLC, SBE Hotel Group, LLC,
SBEEG Holdings, LLC, Sam Nazarian, and Las Vegas
Resort Holdings, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| Luxe Hospitality Company, LLC, | Case No. 2:15-cv-07115-JAK (JPRx) |
|---|---|
| Plaintiff, | **DECLARATION OF CARLOS ROSSO IN SUPPORT OF SBE'S OPPOSITION TO LUXE HOSPITALITY COMPANY, LLC'S MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS** |
| v. | |
| SBE Entertainment Group, LLC, SBE Hotel Licensing, LLC, SBE Hotel Group, LLC, SBEEG Holdings, LLC, Sam Nazarian, and Las Vegas Resort Holdings, LLC, | |
| Defendants. | |
| and related counterclaims. | |

# DECLARATION OF CARLOS ROSSO

I, Carlos Rosso, declare as follows:

1. I have personal knowledge of the following facts and, if called and sworn as a witness, could and would testify competently thereto.

2. At all relevant times herein, I was the Vice President of AMCO PRH 801 South Miami Avenue, LLC, a Delaware limited liability company (the "Developer"), the record developer of 801 SMA, a Condominium, a/k/a SLS LUX Brickell, located at 801 South Miami Avenue, Miami, Florida (the "Project").

3. The Developer, a separate and distinct entity from the Related Group of Florida, a Florida general partnership ("Related"), is an affiliate of Related, and enjoys a license to the trademark "The Related Group."

4. The Developer and SBE Hotel Licensing, LLC, a Nevada limited liability company ("sbe"), share a common objective to develop, market and sell the Project as an SLS branded residential development, but under a new, protectable SLS brand trademark that is separate and distinct from all other previous SLS brand trademarks so as to distinguish the Project from all other residential and/or hotel developments affiliated with sbe's SLS brand, including the SLS Brickell Hotel and Residences located in Miami, Florida. It was anticipated and agreed that the Developer would license from sbe new trademarks for use in connection with the Project. Because the Developer would be licensing the new trademarks from sbe, it was important for both the Developer and sbe to ensure from a legal perspective – not just a business or marketing perspective – that the new trademarks were enforceable, registered, usable, and would not infringe the legal rights of any third parties.

5. In furtherance of that common objective, sbe developed, created and marketed a new and distinctive SLS brand for the Project known as "SLS LUX" and registered a new trademark known as "SLS SLS LUX." SBE Hotel Licensing,

1  LLC then granted the Developer a license to use the SLS SLS LUX trademark and
2  the SLS LUX brand in the development, marketing and sale of the condominium
3  units within the Project, pursuant to a written Marketing License and Development
4  Agreement between sbe and the Developer.

5    6.    It was my understanding at the time—and it remains my understanding
6  today—that the Developer and sbe shared common legal interests in (i) sbe's
7  creation of the distinctive and protectable SLS LUX brand and SLS SLS LUX
8  registered trademark for use in the development, marketing and sale of the Project
9  under the SLS LUX brand and SLS SLS LUX trademark without infringing on the
10 intellectual property rights of third parties, and (ii) the Developer's use of the mark
11 in the development, marketing and sale of the Project under the SLS LUX brand
12 and SLS SLS LUX trademark without infringing on the intellectual property rights
13 of third parties. To be clear, the Developer and sbe also had a common *business*
14 interest in developing the best and most effective brand strategy possible for the
15 Project. But that common business interest is different from and in addition to the
16 parties' common legal interest in ensuring the new trademark was enforceable,
17 registered, usable, and would not infringe the legal rights of any third parties.

18   7.    In furtherance of the parties' common legal interest, I and other
19 representatives of the Developer, and Developer's outside counsel Manny
20 Valcarcel, communicated with sbe representatives, including Sam Nazarian, the
21 CEO of sbe, and Arash Azarbarzin, the President of the sbe Hotel Group, as well as
22 sbe's then-in-house counsel Brandt Mori and sbe's then-outside counsel on
23 trademark matters, Lee J. Eulgen regarding sbe's efforts to develop, create and
24 market the new SLS LUX brand and SLS SLS LUX registered trademark. Again,
25 these communications concerned legal advice regarding the propriety,
26 enforceability, and scope of trademark rights.

1    8.   sbe made Mr. Mori and Mr. Eulgen available to me and other representatives of the Developer if and when we had questions related to these purely legal issues. Likewise, I and other representatives of the Developer consulted with Manny Valcarcel about these purely legal issues to ensure a coordinated and unified legal strategy.

9.   Among other things, we communicated specifically about the legal steps for registering the trademarks being developed, the scope of legal rights the Developer would license, and ways for sbe and the Developer to avoid litigation with Luxe Hospitality Company, LLC (the "Luxe Company"), who purports to maintain enforceable trademarks over the term "Luxe Hotel" (and similar). In order for the Developer and sbe to avoid litigation with the Luxe Company related to the SLS SLS LUX trademark, Mr. Nazarian, Mr. Azarbarzin and I agreed that we would discuss with outside intellectual property counsel for the Developer, Manny Valcarcel, and counsel for sbe, steps to take to prevent the Luxe Company from advancing any claim against either sbe or the Developer. I did so and I understand that Mr. Nazarian and Mr. Azarbarzin did so with Mr. Mori and Mr. Eulgen. We exchanged legal advice and information specifically to further the parties' common legal interest of using the SLS LUX brand and SLS SLS LUX registered trademark in the marketing and sale of the Project and avoiding potential litigation with the Luxe Company about that company's "Luxe" trademark. In some cases, I responded to these communications with questions and thoughts related to the legal advice that I had received.

10.  When I communicated with sbe representatives and counsel, it was on the understanding that legal advice was being sought and provided and the content of those communications was confidential and would not, and should not, be disclosed to third parties, and certainly not to the Luxe Company if the Luxe

1  Company decided to sue sbe and/or the Developer and/or any of the Developer's
2  affiliates.
3        11.    Indeed, all of the communications between and among Mr. Nazarian,
4  Mr. Azarbarzin, Mr. Mori, Mr. Eulgen, and representatives of the Developer,
5  including me, about the legal issues surrounding the creation or use of the SLS
6  LUX brand and the SLS SLS LUX registered trademark, or potential litigation with
7  the Luxe Company, were and remain private and confidential.
8        12.    I have reviewed the documents identified as CTRL00067579;
9  CTRL00067570; CTRL00034232; and CTRL00034121.  These documents reflect
10 and contain legal advice from sbe's counsel which Mr. Azarbarzin conveyed to me.
11 Some of these documents also reflect my thoughts related to the legal advice I
12 received, and questions seeking further legal advice and communication with
13 Developer's counsel.  As described above, Mr. Azarbarzin and I discussed sharing
14 this information specifically to further the Developer's and sbe's common interest
15 of creating and developing a distinctive and protectable brand and trademarks and
16 to avoid potential litigation with the Luxe Company.  When receiving these
17 communications containing the legal advice of sbe's counsel, I naturally understood
18 and expected that these communications were and would remain privileged and
19 confidential.
20     I declare under penalty of perjury of the laws of the United States that the
21 foregoing is true and correct.
22                                   Executed in Miami, Florida on January___, 2017.
23
24                                   Carlos Rosso